UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br> Plaintiff, <br><br> v. <br><br> LOG CABIN PONDEROSA HOMEOWNERS ASSOCIATION, *et al.*, <br><br> Defendants. | Case No. 2:16-cv-00386-JCM-NJK <br><br> ORDER |

On April 3, 2019, the Ninth Circuit vacated and remanded the court's order entering summary judgment against plaintiff Bank of America, N.A. ("BANA"). Pursuant to the Ninth Circuit's directive, the court hereby adjudicates this matter consistent with *Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, No. 17-15796, 2019 WL 1461317 (9th Cir. April 3, 2019) ("*Arlington*" ).

**I.     Facts**

This action arises from a dispute over real property located at 10342 Hanky Panky Street, Las Vegas, Nevada 89131 (the "property"). (ECF No. 1).

Christopher and Jennifer Glover (the "Glovers") purchased the property on or about July 21, 2009. *See* (ECF No. 57-1). The Glovers financed the purchase with a loan in the amount of $406,978.00 from DHI Mortgage Company, Ltd ("DHI"). *Id*. GHI secured the loan with a deed of trust, which names GHI as the lender, DHI Title of Nevada as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. On March 6, 2012, BANA acquired all beneficial interest in the deed of trust via an assignment, which BANA recorded with the Clark County recorder's

office. (ECF No. 57-3).

On August 29, 2013, defendant Log Cabin Ponderosa Homeowners Association ("Log Cabin"), through its agent defendant Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien ("the lien") against the property for the Glovers' failure to pay Log Cabin in the amount of $1,757.62. (ECF No. 57-4). On October 11, 2013, Log Cabin recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,689.28 as of October 8, 2013. (ECF No. 57-5).

In an attempt to exercise its right of redemption, BANA requested from Log Cabin the superpriority amount of the lien. (ECF No. 57-7). In response, Log Cabin provided a payoff ledger of the Glovers' total amount due from November 2012 to March 2014. *Id*. The payoff ledger shows an outstanding balance of $3,054.72 but does not state what portion of the balance constitutes the superpriority portion of the lien. *Id*. The ledger also does not include charges for maintenance and nuisance abatement. *Id*. The ledger does state, however, that Log Cabin's monthly assessment against the property was $58.00. *Id*.

BANA used Log Cabin's ledger to calculate the superpriority amount as $522.00, the sum of nine months of common assessments. *Id*. On March 13, 2014, BANA sent a letter and a check for that amount to Log Cabin. *Id*. The letter explained that the check was the sum of nine months of common assessments and intended to pay off the superpriority portion of the lien. *Id*. Log Cabin rejected the payment without explanation. *Id*.

On July 25, 2014, Log Cabin recorded a notice of foreclosure sale against the property. (ECF No. 57-6). On August 22, 2014, Log Cabin sold the property in a nonjudicial foreclosure sale to defendant MRT Assets, LLC ("MRT") in exchange for $62,000.00. (ECF No. 57-8). On August 25, 2014, MRT recorded the foreclosure deed with the Clark County recorder's office. *Id*. On February 10, 2015, defendant TRP Fund V, LLC ("TRP") acquired all beneficial interest in the property via a quitclaim deed. (ECF No. 57-10).

On February 25, 2016, BANA initiated this action, asserting four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against NAS and Log Cabin; (3) wrongful foreclosure against NAS and Log Cabin; and (4) injunctive relief

against TRP. (ECF No. 1). On March 2, 2016, TRP filed an answer, counterclaim and third-party complaint to quiet title. (ECF No. 6).

On April 18, 2017, the court entered summary judgment, holding that the foreclosure sale extinguished the deed of trust. (ECF No. 73). That same day, the clerk entered judgment. (ECF No. 74).

On May 17, 2017, BANA appealed to the Ninth Circuit. (ECF No. 75). On April 3, 2019, the Ninth Circuit vacated and remanded the court's April 18, 2017, order and directed the court to commence proceedings consistent with *Arlington*. (ECF No. 82). Now, the court adjudicates the merits of this action.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense,

the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.     Discussion**

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the

purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

5

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded foreclosure deed. *See* (ECF Nos. 57-4, 57-5, 57-6, 57-8). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 57-8); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

BANA argues that the foreclosure sale did not extinguish the deed of trust because BANA tendered the superpriority portion of the lien. (ECF No. 46). In light of the Nevada Supreme Court's holding in *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev. 2018) ("*SFR III*"), the court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("NRS 116.3116(2) . . . is limited to an amount equal to the common expenses assessments due *during the nine months before foreclosure*") (emphasis added).

In *SFR III*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *SFR III*, 427 P.3d at 121. Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

The Nevada Supreme Court's holding in *SFR III* controls the court's analysis in this case. Like *SFR III*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, BANA relied on Log Cabin's ledger to calculate nine months of assessments. *See id*. at 118; (ECF No. 57-7). Further, Log Cabin, like the HOA in *SFR III*, did

7

not indicate that the property had any charges for maintenance or nuisance abatement. *See SFR III*, 427 P.3d at 118; (ECF No. 57-7). Thus, when BANA sent to Log Cabin a check for nine months of common assessments, it properly tendered the superpriority portion of the lien.

Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See SFR III*, 427 P.3d at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust"); *see also Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, No. 17-15796, 2019 WL 1461317 at *2–3 (9th Cir. April 3, 2019).

### IV.  Conclusion

In light of the foregoing, the court will grant summary judgment on BANA's quiet title claim. The court will also dismiss all non-quiet title claims as it has adjudicated all pertinent issues in this case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that TRP's motion for summary judgment (ECF No. 54) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion for summary judgment (ECF No. 57) be, and the same hereby is, GRANTED, consistent with the foregoing.

The clerk shall enter judgment accordingly and close the case.

DATED THIS 12th day of April 2019.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE